The first case is v. Martile v. Cuomo, and we are ready to hear from Mr. Brody. May it please the Court, the preliminary injunction now stayed should be vacated because New York acted rationally in preventing plaintiffs from having a 175-person wedding reception during a pandemic. Plaintiffs cannot moot New York's appeal and thereby preclude appellate review of their Just by claiming to have changed their minds about holding a wedding during a state of emergency, they could change their minds again. Imposing heightened restrictions in focus zones did not moot New York's appeal either. The orders challenged here, which allowed restaurants to operate at 50% capacity while limiting social gatherings to 50 people, have remained effective. All the focus zones did in this case was temporarily ratchet down the gathering limit from 50 to 25, which didn't affect plaintiffs' claim. And on January 27, the governor removed all focus zone restrictions from Erie County. Still, if this Court finds the appeal moot, it should follow the general rule and vacate the preliminary injunction to prevent plaintiffs from frustrating New York's appellate rights. Well, excuse me, Mr. Burdi, this is Judge Lynch. If the plaintiffs agreed to the relief that you suggest in the case of mootness, that is, if they effectively withdrew their complaint altogether, that certainly would moot the appeal, would it not? We'd vacate the injunction and everything would return to square one. You disagree with that or not? I don't disagree. What the state would like here is they cater on the merits, because we think the district court's ruling sets the wrong precedent. Well, it doesn't set any precedent at all. It's just a single district judge. And while I understand that the state might like to have this court say that was wrong, if there's no longer a concrete dispute, then the whole thing goes away, including the opinion below, which would be vacated. It would still be out there as something that a judge said, but there are lots of things that judges say that the state of New York might disagree with or not like. That doesn't give them the opportunity to, or give us the jurisdiction to review it, right? Well, right. Your Honor, if we have a vacater and the case is withdrawn, and the case is withdrawn with prejudice, then we have no problem with that. Okay. Understood. Thank you. All right. Proceeding beyond mootness to the merits, New York is likely to prevail on plaintiff's equal protection claim, which is reviewed under the rational basis test. New York has a rational basis for distinguishing between large social gatherings and ordinary restaurant dining. People at social gatherings interact more closely, more frequently, and for a longer time than ordinary restaurant diners. Thus, large gatherings have a higher risk of COVID spread. In finding otherwise, the district court created an ad hoc exception to the gathering limit based on these plaintiff's promises to comply with masking and distancing. The court's approach has two problems. One, states are entitled to make generally applicable rules, even if the lines they draw are sometimes over or under inclusive. Here, New York set data-driven limits that reasonably addressed a fluid developing situation. Two, New York rationally determined that masking and distancing alone are not sufficient to prevent COVID spread at a long indoor gathering. The remaining preliminary injunction factors all favor defendants. Plaintiffs risk no immediate harm because they no longer wish to have their reception during the emergency. In contrast, there's a serious risk to the public if New York is enjoined from enforcing the gathering restriction because wedding receptions are the type of event that's been shown to be a super spreader of COVID. After a surge over the holidays, New York's rate of positive COVID test is trending downward once more. Affirming the injunction would disrupt that success. Vacating the injunction on the merits would enable New York to continue it. Unless the court has questions, I'd now like to focus more deeply on New York's rational basis for distinguishing between restaurant dining and social gatherings. Large social gatherings like wedding receptions, which are held indoors and last many hours, have a high risk of spreading COVID. As the CDC explained, the more people one interacts with at a gathering, and the longer that interaction lasts, the greater the risk of COVID spreading. That's on page 416 of the Joint Appendix, and that in itself gives the state a rational basis to draw a line that prevents crowding at gatherings. Further, people at a gathering arrive and leave simultaneously, causing congestion at the entrance and exit. And wedding receptions are also known for singing and shouting, both of which have been shown to spread COVID. New York also has a rational basis for adding a 50-person gathering limit on top of masking and distancing rules. About 30% of people just don't wear masks. Even people who try to comply might wear the mask incorrectly, or they could wear a homemade mask or some other kind that doesn't perform up to standard. And wedding receptions often involve a long dinner at which people remove their masks to eat. Guests could easily forget to replace their masks while turning to speak with someone from another case. The district court committed a couple of legal errors that exacerbated its failure to apprehend the state's rational basis. First, it wrongly shifted the burden of persuasion to defendants. Under the rational basis test, plaintiffs have the burden of disproving every conceivable basis for distinguishing between weddings and ordinary restaurant dining. The issue is not subject to courtroom fact-finding. It's not a battle of the experts. When the state makes a regulatory choice, the rational basis test does not contemplate relitigating the pros and cons of that choice. The district judge was wrong to think that he must be persuaded, that was the word he kept using, persuaded that the state's rules are necessary. Rather, the court must ask only whether the state acted rationally. The district court also wrongly created an ad hoc exception to the gathering limit. Under the district court's approach, anyone, and this is what we don't like about that the district court's approach, anyone can avoid the 50-person gathering limit by arguing based on individual facts that they could have a larger gathering without spreading COVID. But the state's entitled to set rules of general applicability. For example, a 14-year-old can't demand a driver's license on the ground that, well, he's mature and he has good reflexes. Under established equal protection law, the lines drawn by the state can be imperfect. But where to draw those lines is a matter for New York's elected officials. If the district court's approach were followed, judges could be engaged in determining the appropriate gathering limit for every event. Evaluating each event separately would burden New York and the courts in a way that could frustrate the state's anti-COVID efforts. In material respects, plaintiff's wedding is no different from other large social gatherings. Plaintiff's invitees are their family and friends. Of course they'll mingle. The complaint says on page 54 of the joint appendix, the wedding's purpose is to bring two families together. Only 23 of plaintiff's 175 invitees have promised to follow masking and distancing And the guests will stay together in the same room, breathing the same air, interacting with each other for hours. The DiMartulli wedding, which the district court allowed to proceed, lasted six and a half hours. Video of the DiMartulli wedding showed numerous violations of masking and distancing. People were standing and talking unmasked, the minister kissed four bridesmaids, and the chairs were set shoulder to shoulder, not six feet apart. There's a high risk of irreparable harm if New York is enjoined from enforcing gathering restrictions. Mr. Brody, you reserved three minutes of rebuttal time. Do you want to use some of that time now or continue to reserve it? I will use half a minute now. While nobody can predict with certainty that a particular event will spread COVID, the In our opening brief, we cited six instances where weddings had caused COVID clusters. By the time our reply brief was filed, there were seven new reports of weddings that had spread COVID. The balance of equities therefore weighs against plaintiffs. Defendants aren't preventing their wedding. They can still marry, they can have a religious ceremony, they can hold their reception arrowhead. We're just simply trying to ensure that the wedding takes place in a safe manner that doesn't unduly risk spreading COVID. I'll reserve the rest of my time. Thank you. We'll hear from Mr. Rupp. Good afternoon, Your Honor. May it please the court. I'd like to begin with the mootness argument. This action is moot. My office sued on behalf of two couples who were to be married on August 7th and August 22nd of last year. Excuse me. Can I interrupt right away, Mr. Rupp, and ask the question that I asked the government? They argue that if you're right that the appeal is moot, that the correct remedy is to vacate the injunction and remand with instructions to the district court to dismiss the entire complaint, or at least as it involves your clients, as moot. Do you disagree with that? I didn't see anything in your brief that responded to that argument. I do disagree with it, Your Honor. For the reason that when the state has caused the mootness to occur, which is- Wait, wait, wait. Now, I understand what you're going to say, but if you want to keep this injunction in place, wouldn't that give, and I don't mean to suggest that anyone's not in good faith, but people change their minds. If the vaccine doesn't work and the quarantine goes on longer and longer, your clients might decide that they want to have their wedding again, and there is an injunction in place that would let them have it the very next day if they chose to do that without notice to the state. So, how can it be moot if you want to keep this injunction in place? Well, Judge, first of all, our complaint sued for a wedding that was to take place on August 22nd. The Julia Durelock wedding was the second of the two. We didn't sue for subsequent or rescheduled dates. We sued for a date certain. That wedding had been planned for a long time. Scores of guests were invited. When this court and Judge Chin issued the interim stay, that wedding ended, and all of the preparations for it ended. Well, isn't that all the more reason why the entire complaint is now moot? Judge, we believe it is moot. The question is what happens to the injunction, and it's important to my clients and to my office because it involves prevailing party status. We prevailed in the matter before the district court. The state caused the mootness here. They caused the state to allow the August 22nd date to go by. We told them the case was moot. We offered to withdraw it, but they said no. They wanted to go off to the Second Circuit and get some presidential decision out of this court. So that's why we're here. But if you're not willing to have the injunction vacated, if you really want it to remain in place, it seems to me the bar goes up on your clients to show that there's really no reasonable likelihood that they will change their minds, and I don't really see how you can satisfy that showing. Well, here's how I think we can satisfy it. First of all, we're constrained by the pleadings. We asked for, and the only relief we asked for from the court was for a wedding to be allowed to take place on August 22nd, 2020. That date has passed. We did not ask for a wedding on subsequent rescheduled dates, as the judge just asked me. We did not say, you know, we're going to get married whenever we feel like it. We said a date certain, and there was a reason for that. Well, but excuse me, Mr. Rupp, if that's the case, then isn't the injunction has become moot already by its own terms. The state didn't make it moot. You made it moot. No, Your Honor, the state made it moot because the wedding could not go forward because of the interim stay issued by this court, which the state asked for. We didn't ask for it. They asked for it. So there's no reason, and there's prevailing case law from this circuit indicating that when the losing party, which here was the state at the district court level, is the one that causes the mootness to occur, in other words, causes the only date we ever asked to get married on to go by, then they don't get to then vacate the injunction and pretend it never happened and go back to the district court and argue that somehow they're the prevailing party because they got the injunction vacated because of a procedural step that was taken at the Second Circuit. I don't know who becomes the prevailing party, but it does seem to me that whether the state does anything or doesn't do anything, we have a responsibility to only adjudicate cases that are cases in controversies. And if there's no controversy anymore, there's no case anymore. And Judge, that is exactly what we contended in our brief. We have an entire section on the mootness of this case and the mootness of this appeal. It is the state that has imposed their own criteria on what they would like to see happen. Yes, but you know, it's not just the appeal that's moot. It's the entire litigation that's moot. I agree, Your Honor. I agree. But if the entire litigation is moot, how can an injunction that was issued pending the outcome of the case still have any force and effect? I don't understand that. Well, that's what the case law says, that the injunction does not necessarily get disturbed, especially when the losing party is the one that causes the mootness. And that's ensconced in the case law. And I mean, I have case law right here that I could say to the court. But, you know, Mr. Brody, in his brief, cites the general rule that when a case is moot, the injunction is vacated. That's not the rule. The rule is, and there's Supreme Court precedent on this, that the court has to evaluate which party caused the mootness. And if one party, if the losing party especially causes the mootness, which often happens to avoid appellate review, the injunction often stands. But if they caused the mootness by getting a stay, didn't they cause the mootness by winning something, not by losing something? Well, no, Your Honor, because the stay was an administrative stay. It was not on the merits. The wedding date passed by on a single stay issued by Judge Chin. It was not on a full panel of this court. And by the time the full panel met, the matter was moot then because the August 22nd date had gone by. My clients had gotten married and they had said, look, we're not going to try to reschedule 175 guest wedding in the middle of a pandemic. And I duly advised the court of that. I duly advised Mr. Brody of that. And then we took the position in our brief that it was moot and nothing would satisfy the state defendants. They had to come up here and get a decision from from this panel. And they said the only way that they would not do it was if we said we're vacating the injunction on the merits. And we said, why would we do that? We were the prevailing party. You moved it out the injunction. We're not going to do that. So here we are. And that is the only issue that I see that really is before the court right now is what happens to the injunction. I think the law is clear. The injunction stands. How does what force does the injunction have? I mean, the injunction has expired by its terms. How does the injunction stand? What does it enjoin whom to do? Well, what the case law says on that is that the court will evaluate whether there's a prejudicial effect of avoiding or vacating the injunction when the cause of the mootness is is the non prevailing or the losing party below. And so here, Your Honor, what I think the state really would like to achieve is is some type of decision out of this court on the merits that they would then be able to go even though one of my clients couples was able to get married on August 7th and the other one had a prevailing decision in hand from the district court judge on the 22nd. But for Judge Chin's issuance of the interim stay. Well, there you go. There you go. You get to say you were the prevailing party. So go and have that argument in the district court. Maybe I don't know. I think so, Judge. But I think the injunction should stand to enable me to make that argument better. But I think the case is moot and we have contended all along. And I'm sorry that this the Second Circuit's time had to be spent on a case that has been so obviously moot. Thank you, Mr. Rapp. Thank you. We'll hear rebuttal. Thank you, Your Honor. The state did not move this case. Focus zones were not adopted with the intent of mooting the appeal. They were temporary to be adjusted based on new data. Well, Mr. Burdi, I don't think that Mr. Rapp, maybe he's making that argument in his brief, but here he was making the argument that somehow you mooted the case by getting a stay. Well, I'm looking at page 35 in response to that of the joint appendix, and it says defendants are preliminarily enjoined from enforcing the above-referenced 50-person limit against plaintiffs in the operation of their weddings at the above-referenced venues. It doesn't say on August 22. It says at the above-referenced venue. So if the injunction is not vacated, plaintiffs can go back and under this injunction, they can go back to the same venue and have that wedding. What's more, in ECF number 33, after this court entered an emergency stay, Mr. Rapp said that the plaintiffs have postponed their wedding and they will likely be rescheduling it for a date in the near future. And they respectfully request that the pending motion for a stay be placed on the next available calendar date. Now, it was already stayed. The stay had lasted past the date of the wedding on the 22nd. And there's no suggestion of mootness in that letter. Again, that's ECF number 33 in this court's file. So the injunction needs to be vacated. It needs to be vacated whether the court reaches the merits or whether the court addresses mootness. And I should note that the stay was to preserve the status quo. Again, plaintiffs can change their mind again. They can have the wedding whenever they want. The stay was certainly not obtained with the intent of mooting the case out from under the plaintiffs or mooting the defendant's appeal. The stay was intended to enable the defendants to appeal. Unless the court has questions on the merits, I'll just note that New York's positivity rate now is 4.4 percent. It's trending downward. And that's because New York has exercised its police power, among other things, to limit large social gatherings. If the court's, if the district court's precedent stays in effect, anyone can come in and say the general rule shouldn't apply to us, even though it's a general rule. We have special circumstances. And then the state's enforcement is going to be frustrated. Unless the court has further questions at this point, I'll rest on the briefs. Thank you, Mr. Brody. Thank you both. And we'll take the matter under advisement. Thank you, Your Honor.